Appellate should come forward and introduce themselves. Good morning. My name is Mike Fuller. I'm an attorney for the appellant, Antoinette Maxwell. This is my first appellate argument. I'm very excited to be here. I'll reserve five minutes of my time for rebuttal. You're doing well so far, so please proceed. Thank you. I'll get right to it. The record has no evidence of reasonable reliance in this case. I won't explain 523A2B to you. You know that it was amended to include the requirement that creditors provide an explanation of reasonable reliance to prevail. In this case, when you review the trial transcript, the State simply presented no evidence of anyone's state of mind or of anyone's actual reliance on the applications at issue. There was one witness from the State in this case other than Ms. Maxwell. Let me ask you about the actual reliance point. Courts can draw inferences from facts in the record, right? Couldn't you infer from the fact that the State asked for all this information that they were going to actually rely on that information? You could infer that, but if you did, you'd eviscerate the reasonableness requirement because you're always going to have a case where there's information provided and a benefit received based on the information. I'm trying to take it at two steps. You challenged both actual reliance and reasonable reliance, and my first question has to do with actual reliance. Couldn't you infer actual reliance from the fact that the State asked for all this information? They didn't ask for it just for the heck of it, right? That's correct. I mean, yeah, there was actual reliance. Was it justifiable or reasonable? That's our argument. I mean, I guess you're always going to have reliance as long as the benefit matches up with the application. So you're right, Your Honor. In this case, we're focusing more on the reasonableness element, what actually took place, what explanation was offered as to what investigation was done or not done, the reasonableness of the reliance on the information. The sole witness from the State in this case admitted on the stand that she just had no knowledge about reliance at all, and that's fine because she came along after the fact. This case is different than almost every other BAP case I've found on point where there is no evidence and there is no witness in this case that actually had any knowledge of what happened during the processing of the applications at issue, and I think that's important. Let me ask you one of the things that struck me. Is this a case of affirmative misrepresentation or omission? The Court decided it was of affirmative misrepresentation. If it was an omission, by definition there can be no reliance then. I mean, isn't it pretty well settled by now if this is really an omission case, then it's presumed that there's reliance because it wasn't disclosed? That could be correct. We don't feel that it would then fall under. I mean, it's respecting a financial condition of the debtor, and so we feel that it has to be a statement in order to be non-dischargeable. And you believe that the statement was the representation of the income as stated, not the undisclosed amounts that were omitted? That's the State's theory, and that's what the judge decided, and that makes sense to me. Okay. So your point is that it was unreasonable for the State to rely upon your client's representation as to what her income was? No. I don't need to prove it was unreasonable. My argument is that at trial there was just no evidence whatsoever as to the reasonableness requirement, and I don't bear the burden. Now, it's not much of a burden. It's a preponderance. But there was just no evidence. And we argue that it was intentional because the State was going to proceed under subsection A, and then the court didn't adopt that theory, and so it was left with subsection B. No one at trial knew how these applications were processed. The State provided her the very income it later said that was complained was missing. Well, some of it, right? Well, right, some of it. And we would have asked about that if there was any witness that knew anything about the reliance. There just wasn't. So we couldn't even do a cross because there was just no evidence about who relied, when they relied, how they relied. And then I think in oral argument the State seemed to make clear the State does just automatically rely on these because I think the State said it has to. Well, that's just not acceptable when you read 523A2B and you read the reasonableness requirement. Why is that the case? So there always has to be some kind of investigation? Not investigation, but there has to be evidence or an explanation of reasonableness in the record. And when you look through 523, you see that Congress chose certain types of debts get certain treatment, whether it's domestic support benefits, credit cards used to buy luxury items, taxes. 523A2B, Congress did not categorize the types of benefits or the types of debts at issue. It required every creditor to prove reasonable reliance. I understand that you didn't have the burden at trial, but what's unreasonable about the State simply taking these applications that are submitted under penalty of perjury, looking at them, and relying on them? Well, some people criticize the State because they feel the State has incentives to dole out benefits even when the person is not entitled to them. That evidence isn't in the record, so I won't speculate. There's also no evidence in the record of any reasonable reliance whatsoever. This is a case where the State intentionally chose not to bring anyone who could even speak to the reliance issue. Is your position that there is essentially an affirmative requirement to bring a witness to say the words? No, but it's hard to get evidence of reasonable reliance without a witness. I suppose you could do it. When you look at the Gerge case, the BAP 1999 case on 523A2, it found reasonable reliance based on a declaration of a person with personal knowledge of the application at issue who explained how that application was handled. And so it can be done a variety of ways. In this case, the best thing you could argue is that you've got exhibits, and all they do is show how the benefits were calculated. But we're not here disputing whether the calculation was correct. We're here disputing whether there was reasonable reliance. And the State raises for the first time on appeal that, well, the penalty of perjury was a factor. Well, it could have been or it could not have been. We don't know because that's not in the record. There's no evidence that the State placed extra reliance on this document being signed under penalty of perjury or not. Is the question – I mean the word reasonableness to me sounds like an objective requirement. So why is what the State did necessarily implicated? Well, you're right, Judge. It is objective. And so you need to have evidence that a prudent, ordinary person under the circumstances who is cautious would have behaved the same way. And we just don't have any evidence of it. I can't hardly prove that it wasn't reasonable when I'm here defending a case, and we didn't do any discovery. We were retained the day before trial. And I showed up, and there was just nobody who knew anything about reliance. So it is a prudent person standard. There's just a complete lack of evidence. And the court did try to draw two inferences to satisfy that burden. And respectfully, when you look back over the record, those two rationales just aren't supported. One rationale being that, well, these are very important benefits, and no doubt they are. But, again, Congress did not create a per se rule. It easily could have, and it does in other areas. It just didn't. So our argument is that just the nature of the benefits alone does not satisfy reasonableness. And the court was also persuaded. It cited the design of the system and policies. And we made that pretty clear in our brief, that when you do look back over the record, there's just no testimony or evidence about that. It was the argument. And that's fair. It may well be true, but it's not in the record. And I had no opportunity to cross-examine it. And with that, I'll answer any final questions and reserve my time. Thank you. Thank you. Good morning. I'm Mark Hull. I am the Assistant Attorney General who is representing the Department of Human Services in this matter. For the most part, the department is going to rely on what it's submitted in its written briefing. However, a couple of important things to point out. One is, obviously, with respect to the prudent person, standard and reasonable reliance, looking at the objective degree or objectively at what the creditor did, how they acted, how they behaved within the business or transaction that they were conducting is a key factor. And it's this circumstantial aspect that is unique in this case in that this isn't a commercial lending case. The state's not looking to lend Ms. Maxwell any money. And Ms. Maxwell wasn't filling out an application for credit. She was filling out an application for benefits. Oftentimes, these benefits are necessary for the very survival of herself and her family and are often in emergent circumstances and necessary for immediate responses by the state. And that doesn't lend itself well to a long, protracted review of credit histories, credit reports, et cetera. Moreover, there's a lot of reliance by Ms. Maxwell on cases that deal with commercial lending as sort of the standard by which reasonable reliance should be measured. But those deal with mortgages. Those deal with individuals trying to get credit cards or loans for cars, personal loans, et cetera. So could you summarize for us what the testimony in the record is that relates to this issue, to the issue of reasonable reliance? I understand that the state had a witness. The witness was someone who sort of determines how the benefits will be calculated and how much is, and this person testified that based upon the application, they took it at face value and then they just calculated what the benefits were. And I gather counsel's argument is that that doesn't provide any evidence for reasonable reliance. But can you tell us how that works? Well, I think it works from the perspective that it is testimony. Based upon what's in the record, okay. Based upon what the testimony was in the record, that we discussed the applications for benefits. And one of the things Ms. Carter, who is an overpayment specialist, indicated was that the applications are signed for under the penalty of perjury, which is, from the Department's perspective, according to her testimony, a certification of the truth and accuracy of the information that's in the application. And she also testified that there are penalties, which are in the application, that talk about the various risks that somebody faces for not accurately completing the applications, for not omitting information that's necessary. But a false bank loan application is perjury, bank fraud. There's any number of criminal penalties that go with that, right? So why is this different? Why does the record show this is different? Well, I don't know that it is any other. It is different, per se. I think that it is unique because of the type of situation that we're dealing with. We're not dealing with a bank loan, per se. We're dealing with a generation of benefits for individuals. So I think that there is, in terms of just looking at the overall circumstances, as the rule requires us to do, they aren't the same as a commercial lending circumstance. So there is some difference there. And I think that, as counsel had referred to with the Gertz opinion, I think that there's a fairly low standard for the state to demonstrate reasonable reliance anyway because of the false statements that were made on the applications. Ms. Maxwell is not arguing that that wasn't the case. She's arguing that we should be held responsible for the fact that we didn't do enough to find her omissions and misstatements of fact. And in Ray Gertz it says, when there's evidence of materially fraudulent statements, little investigation is required for a creditor to have reasonably relied on those representations. I want to change topics a little bit. What about the fact that the child support payments were in the state's database, so to speak? What's your response to that point? I think that there's a couple of points. Number one is whether or not that is the case. I don't know that that excuses Ms. Maxwell from failing to report that information. It's clearly requested on all these applications over a four-year period of time. Secondly, Ms. Carter, in her testimony, did have the luxury of looking back over time and being able to collect information that may or may not have been available to the caseworker at the time in real time. The child support information is held by the Department of Justice, as Ms. Carter testified to. And it's fairly difficult to get the information because of the sensitive nature of the information that there is available. And so they're only entitled to get what's referred to as screenshots. And so as part of the evidence that was presented by the state, we did provide some of the screenshots that Ms. Carter was able to get in doing her analysis. But that doesn't necessarily mean that that information was widely available to case or line workers at the time that these applications were submitted. Was there evidence that it wasn't available to the line workers, to the application screeners, so to speak? Ms. Carter testified that as an investigator, in part of her investigatory role, she is able to access this information. In stating that, I don't believe that she said that, per se, everybody else isn't entitled to get the information. I do want to point out that I think that the applications themselves are pretty good evidence of reasonable reliance, in that they are substantial. They are at least 15 pages long. They require a lot of information from an individual. This is not a one-page thing where somebody can come in and get application or get benefits by submitting a simple application. Thought needs to go into this. And that's a reason for the state to regard the information that's in these pages as being reliable. There were no red flags identified. I mean, Ms. Maxwell completed the applications very consistently over that four-year period of time, so there's nothing that would have flagged the state to look closer. Counsel, so your argument is that given the circumstances of the case, which is that this is an application for welfare benefits that may be essential for the survival and the maintenance of a family, and that it is sort of, per se, reasonably for the state just to rely upon the application, that the application under those circumstances, which is used to calculate the benefits, in and of itself is sufficient to satisfy whatever burden you had in this case? Is that your argument? I think given the fact that we had a low burden to begin with in determining reasonable reliance, that that is almost correct. I don't know that that's the only thing that there's evidence of reliance on, but it's certainly a big piece of it. What else would you point to? Well, I would say that the fact that the methods for calculating these documents and the regulatory scheme that was required I think also go into the importance of relying on the or a reasonable reliance on the applications, and the fact that we aren't obligated to do extensive background checks or review each representation on the application with incredulity, requiring different verification standards. I believe that the applications in themselves are a good basis by which to generate the conclusion that the state acted reasonably. And I think that when you consider the fact that it is under penalty of perjury, I know that Ms. Maxwell sort of dismisses that, but it's important, and it's important to the state, and it's a certification of the accuracy of the record and the information that's provided, and the state has to be able to rely on that. And under the circumstances, a creditor-debtor relationship really didn't exist with Ms. Maxwell until it was discovered that she hadn't been accurate on her paperwork. So to suggest that the state should have taken a debtor-creditor stance with her at the beginning of the process when she was simply asking for benefits to make the ends meet, I think is a higher standard than what the state should be held to. Any questions? Thank you very much. Well, let's go to the heart of the matter. What counsel's arguing is that this isn't a commercial transaction. Sometimes in a commercial transaction, the bank doesn't meet its burden because the information is such that the bank could not have reasonably relied upon it. They knew other things, or it just didn't make it. When you put all the evidence together, you say, well, it wasn't reasonable for you to rely upon that financial statement. But this is an application for benefits for the family so that they can buy food under generally emergency situations, and we ought to look at it differently. How do you respond to that? Well, why shouldn't we be more careful when we're talking about limited resources for people in need? Why shouldn't we be more careful before we dole those out? Is that the burden? I don't hear you actually answering the question. I think what I'd like to focus on, what was it specifically within the application that tripped up that should have known, right? You conceded that there was actual reliance. It wasn't reasonable. So what teed it off that it was not reasonable in further inquiry? Because you're not arguing that everybody has to do this from the beginning, are you? I am arguing that every creditor who seeks to have a debt determined non-dischargeable must present actual evidence of reasonable reliance. But you're jumping to the end. Okay. At the beginning, when the application was submitted, did the state of Oregon need to conduct further inquiry just by virtue of the application? I don't know because I don't know what they did. But you know what the application is. I do, and I know that just processing an application is never evidence in and of itself of reasonable reliance or we wouldn't have this requirement because there's always going to be an application. What's your authority for that position? Because there's always going to be an application, there's always going to be a calculation, and there's almost always going to be a regulatory scheme no matter what benefit you're talking about. But what you're saying is that any lender must then challenge the information on the application. No. They must prove that they reasonably relied. It's a burden placed on them. It didn't used to be there. It is now. So they have to affirmatively prove it. But why can't you rely upon the sworn application presented? I think that's, and Judge Kurtz can follow. I don't mean to hijack his question. Maybe you can in some circumstances. You just need to explain why that's reasonable under an objective prudent person standard, and it's that explanation that's completely missing, and it was missing from the complaint, and it was missing from the trial brief, and it was missing from trial. But inherent in this is you ask me to give you money. I ask how much do you make. You tell me. Why isn't that reasonable for me to realize, especially when you swear under oath that that's true? Well, then you tell me what's the difference between justifiable reliance and reasonable. I think you're confusing the roles here. You're right, Your Honor. There's an added step there. If we were just dealing with the pre-amendment 523, then maybe I would concede this point. We wouldn't be here on appeal. Congress specifically changed it to put a reasonableness requirement in there as an added step onto not just what that person justifiably did subjectively, but it has to be reasonable under the circumstances. Why is reasonable necessarily a higher standard than justifiable? Isn't it at least conceivably possible that you could have a creditor of some kind who had every right to simply rely on what the debtor told without any questions? I thought about that in briefing this case, and I guess our argument is that we believe you're required both if you're going under subsection B, both justifiable and reasonable. We do know, and the man's opinion from the U.S. Supreme Court tells us, that it was intended as a heightened standard. So we know that, that that was the intent of Congress, was to make it even more difficult when it's a statement respecting financial condition. I would just come back to, you know, the State was asked, and it was asked at trial as well, what evidence in the record is there of reasonableness, and the only thing that we heard was the application itself, the calculation, and the regulatory scheme. And, you know, our position is that that is going to be the facts in almost every single case and that we shouldn't be creating a special rule for the State. Maybe Congress should, but we shouldn't. Every creditor, regardless of what the type of benefit is or the type of regulation, must provide evidence of reasonable reliance, and in this case it didn't happen. And we may not be here if it had, because I might have asked some cross-examination questions and it might have, there might have been something in the record that it was reasonable. All we have is just somebody who came after the fact who said that, based on the information, here's how the benefits were calculated. There is just no evidence that the actual reliance was reasonable, and this, you know, if you affirm the judgment, you're going to be, you know, setting a completely new low bar for what creditors are required to prove. I challenge the Court to find a BAP opinion where there was no testimony and no documents, at least talking about the state of mind or the explanation given. In this case, the only explanation given was by the Court with its two rationale, which we've explained, and then also the State's under penalty of perjury rationale that only came about on appeal. Thank you. Thank you. The matter is submitted. We are adjourned. Thank you very much.
judges: Kurtz, Faris, and Spraker